1  Farimah Brown, City Attorney, SBN 201227
   Lynne S. Bourgault, Deputy City Attorney, SBN 180416
2  BERKELEY CITY ATTORNEY'S OFFICE
   2180 Milvia Street, Fourth Floor
3  Berkeley, CA 94704
   Telephone:  (510) 981-6998
4  Facsimile:  (510) 981-6960
   Email:  LBourgault@cityofberkeley.info
5
6  Attorneys for Defendant CITY OF BERKELEY
7
8
9
10
11                  UNITED STATES DISTRICT COURT
12            FOR THE NORTHERN DISTRICT OF CALIFORNIA
13

| | |
|---|---|
| 14  ARTHUR MOORE, as successor in interest of XAVIER MOORE, | No.  3:14-cv-00669-CRB |
| 15 | **DEFENDANT'S TRIAL BRIEF** |
| 16          Plaintiff, | Date:   October 18, 2017 |
| 17  v. | Time:  10:00 a.m. <br> Ctrm:  6, 17th Floor |
| 18  CITY OF BERKELEY, | |
| 19          Defendant. | |
| 20 | |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................................... 1

BACKGROUND ........................................................................................................................... 1

    I.  Factual Background ..................................................................................................... 1

    II. Procedural Background ............................................................................................... 3

ISSUES FOR TRIAL ................................................................................................................... 4

    I.  Issues That Have Already Been Determined .............................................................. 4

    II. Plaintiff's Remaining Claim for Disability Discrimination Under the ADA ............... 5

        A.  Moore is not a qualified individual under the statute's criteria ............................ 5

            1.  Moore is not qualified under the ADA because she was illegally
                  using drugs ................................................................................................... 6

            2.  Moore is not qualified under the ADA because she presented a
                  threat to the health or safety of the officers and others ................................... 6

        B.  The "Accommodations" Proposed by Plaintiff are Not Reasonable Under the
            Circumstances ................................................................................................... 8

        C.  Plaintiff Has Not Identified the "Crime" Officers Confused with Moore's Mental
            Illness ............................................................................................................. 10

    III. Plaintiff's Damages Claim Under the ADA ............................................................ 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Barnes v. Gorman,*
    536 U.S. 181 (2002) ........................................................................................................... 11

*Bircoll v. Miami –Dade County,*
    480 F.3d 1072 (11th Cir. 2007) ......................................................................................... 7, 9

*Bragdon v. Abbott,*
    524 U.S. 624 (1998) ............................................................................................................. 7

*Chaudhry v. City of Los Angeles,*
    751 F.3d 1096 (9th Cir. 2014) ........................................................................................... 12

*Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.,*
    467 U.S. 837 (1984) ............................................................................................................. 7

*City & Cty. of San Francisco, Calif. v. Sheehan,*
    135 S. Ct. 1765 (2015) .................................................................................................... 5, 11

*Duvall v. County of Kitsap,*
    260 F.3d 1124 (9th Cir. 2001) ........................................................................................... 11

*Graham v. Connor,*
    490 U.S. 386 (1989) ............................................................................................................. 4

*Waller ex rel. Estate of Hunt v. City of Danville,*
    556 F.3d 171 (2009) ........................................................................................................ 9, 10

*Jackson v. Town of Sanford,*
    1994 WL 589617 (D. Maine) ............................................................................................. 10

*Lewis v. Truitt,*
    960 F. Supp. 175 (S.D. Ind. 1997) .................................................................................... 10

*Lockett v. Catalina Channel Express, Inc.,*
    496 F.3d 1061 (9th Cir. 2007) ............................................................................................. 7

*Lovell v. Chandler,*
    303 F.3d 1039 (9th Cir. 2002) ........................................................................................... 11

*McGary v. City of Portland,*
    386 F.3d 1259 (9th Cir. 2004) ............................................................................................. 7

*Monell v. Dept. of Social Service,*
    436 U.S. 658 (1987) ......................................................................................................... 3, 5

*O'Guinn v. Lovelock Corr. Ctr.*,
   502 F.3d 1056 (9th Cir. 2007)................................................................5

*Pease v. Beech Aircraft Corp.*,
   38 Cal. App. 3d 450 (1974)................................................................12

*School Bd. of Nassau County v. Arline*,
   480 U.S. 273 (1987)................................................................6

*Seremeth v. Bd. of County Comms. Frederick County*,
   673 F.3d 333 (4th Cir. 2012)................................................................7, 8

*Sheehan v. City and County of San Francisco*,
   743 F.3d 1211 (9th Cir. 2014)................................................3, 5, 8, 9, 11

*Theriault v. Flynn*,
   162 F.3d 46 (1st Cir. 1998)................................................................8

*Vinson v. Thomas*,
   288 F.3d 1145 (9th Cir. 2002)................................................................5

**Statutes**

28 C.F.R. 35.131(a)(1)................................................................5

28 C.F.R. 35.139................................................................5, 6

28 C.F.R. § 35.104................................................................6

28 C.F.R. § 35.139(b)................................................................7

42 U.S.C. § 12132................................................................3, 5

American's with Disabilities Act (ADA)................................................*passim*

**State Statutes**

California Code of Civil Procedure § 377.30................................................11

Civil Code § 51.7................................................................2

Civil Code § 52.1................................................................3

Penal Code § 148................................................................11

Welfare & Institutions Code § 5150................................................1, 4, 10

**Other Authorities**

U.S. Const. amend. IV................................................................2, 3, 9

U.S. Const. amend. XIV................................................................2, 4

iii

# INTRODUCTION

Plaintiff's only remaining claim for trial is disability discrimination under the American's with Disabilities Act (ADA). Plaintiff Arthur Moore, who is "successor in interest" to his daughter, Kayla Moore, brings the ADA claim as a "survivor action" pursuant to California Code of Civil Procedure (CCP) section 377.30.

# BACKGROUND

## I.    Factual Background

This case arises out of a February 12, 2013 call for police services that culminated in an effort by officers to take Kayla Moore ("Moore") into protective custody for a psychiatric evaluation under Welfare & Institutions Code section 5150.

Close to midnight, police dispatchers received a call from John Hayes, who identified himself as Moore's roommate. Mr. Hayes reported that Moore was "schizoaffective," "off meds and drinking alcohol," and "doing drugs all day." Mr. Hayes also reported that Moore had just kicked him out of the small apartment they shared because Hayes refused to give Moore money to buy more drugs. He told dispatchers Moore was not armed with a weapon, but had access to kitchen knives and had been known to use them in the past.

Three Berkeley police officers responded to the call for service. Officer Gwendolyn Brown was the lead officer, and Officer Kenneth Tu and Officer Brandon Smith acted as cover officers. Officer Brown first spent several minutes talking to Mr. Hayes outside the apartment building about what had prompted him to call police. Mr. Hayes then led the officers inside and up to the fifth floor of the multi-unit apartment building. He opened the door to the apartment with his key, and Officer Brown called Moore to the door. Officers Tu and Smith stood on the fifth floor open-air landing, several feet away from where Officer Brown conversed with Moore.[1]

---

[1] A month earlier, Officer Brown had been dispatched to perform a "welfare check" on Moore at the behest of her stepmother. Although Moore was not home when Officer Brown went to check on her, Moore's stepmother had given Officer Brown a substantial amount of background on Moore.

1    Officer Brown asked Moore what was "going on" with her and her roommate. Moore's

2    responses indicated she was delusional (she repeatedly said she saw women behind Officer

3    Brown, but no women were there), she was paranoid (she repeatedly said the FBI was following

4    her and she did not feel safe), and she appeared to be high on some kind of drugs (her demeanor

5    and mood shifted constantly, going from bubbly to fearful to agitated). Regarding Hayes, Moore

6    said, "Crunchy is always f'[]ng up." Despite Moore's inability to track Officer Brown's

7    conversation and her highly delusional state, Officer Brown spent 15 to 20 minutes talking to

8    Moore before she correctly determined Ms. Moore should be taken into protective custody under

9    Section 5150.

10    Knowing Moore had been 5150'd many times, Officer Brown decide to try to persuade

11    Moore to submit to custody by telling her she had an outstanding warrant that needed "clearing

12    up." While they were still outside the apartment building, Officer Smith had told Officer Brown

13    that "Xavier Moore" had a $10,000 warrant out of San Francisco.[2] Officer Brown knew from

14    Moore's stepmother that Moore had just moved from San Francisco, and the stepmother also

15    told her that San Francisco police had had so many dealings with Moore and Hayes before they

16    moved to Berkeley that San Francisco police were fed up with them. Officer Brown therefore

17    believed the warrant was likely for Moore. (Berkeley police later confirmed the warrant was in

18    fact for Moore.)

19    Officer Brown told Moore, "let's go down to the station and clear up" the warrant, but

20    Moore denied that she had a warrant and said she wanted to go inside to contact the FBI.  Officer

21    Brown then spent an additional five to seven minutes (on top of the 15 to 20 minutes she had

22    already spent) trying to calm Moore down and persuade her to go with her. Officer Brown

23    recognized the situation had reached the point that Moore needed to be handcuffed because

24    Moore needed medical help for her mental instability and delusions. Given she also appeared to

25

26

27    _____

28    [2] "Xavier Moore" is Moore's legal name and the name given to dispatchers by the reporting
party, Mr. Hayes. It is the name used by plaintiff in the caption of this action. Officer Brown had
no information at the time that Moore sometimes used the name "Kayla."

1   be high on illegal drugs and unpredictable, Officer Brown signaled to Officer Tu that she wanted

2   them to handcuff Moore.

3         When Officer Brown and Officer Tu grasped Moore's wrists, Moore resisted and

4   struggled with the officers.  Due to a toxic amount of methamphetamine in her system and a

5   diseased and damaged heart, Moore suffered cardiac arrest and died, despite officers' efforts to

6   revive her.

7   **II.     Procedural Background**

8         Plaintiff's Second Amended Complaint set forth 9 causes of action: (1) unlawful arrest

9   under the 4th Amendment; (2) excessive force under the 4th Amendment; (3) violation of right to

10  familial relationship under the 14th Amendment; (4) municipal liability under *Monell*; (5)

11  wrongful death; (6) violation of Civil Code § 51.7; (7) violation of Civil Code § 52.1; (8)

12  battery; and (9) violation of 42 U.S.C. § 12132 (ADA). All but the last cause of action, for

13  violation of decedent Moore's rights under the ADA, were resolved in favor of defendants at the

14  summary judgment stage. See October 14, 2016 Order Granting in Part and Denying in Part

15  Defendants' Motion for Summary Judgement. ECF # 71.

16        In his Second Amended Complaint, plaintiff alleged as follows with respect to the ADA

17  claim:

18        Defendant Officers failed to provide reasonable accommodations during

19        their encounter and arrest of Decedent MOORE by failing: to utilize inter-
      departmental protocols when evaluating whether he, as a mental health

20        suspect, was a danger to himself or others; to follow inter-departmental
      and industry-wide accepted protocols when encountering mentally

21        unstable suspects; and to utilize inter-departmental protocols that were

22        specifically created to inform CITY OF BERKELEY police officers how
      to handle encounters with Decedent MOORE specifically.

23  SAC ¶ 78. At the summary judgment stage, plaintiff asserted that he "does not have to explain a

24  reasonable accommodation," even though it is his burden to do so. At this pretrial stage, plaintiff

25  continues to give mixed signals about what he believes are the proposed reasonable

26  accommodations that would have allowed Moore to be taken into protective custody without

27  suffering harm or indignity during the arrest. *Sheehan*, 743 F.3d at 1232. For instance, the

28  proposed accommodations plaintiff sets forth in the parties' Joint Pretrial Order are different

1  than the proposed accommodations plaintiff describes in his oppositions to defendant's motions

2  *in limine*. *See, e.g.*, Plaintiff's Opposition to Defendant's Motion in Limine No. 2 to Exclude

3  Roger Clark at 3:26-28 (stating that Mr. Clark will offer the "relevant" opinion that "Officers are

4  required by law to make an oral advisement before making a 5150 detention, which none of the

5  officers gave to Moore."); *see also* Opposition to Motion in Limine No. 3 at 2:22-25 (stating that

6  "While the officers [sic] force may have been lawful under the Fourth Amendment, the officers

7  [sic] same use of force may have violated Ms. Moore's right to a reasonable accommodation

8  under the ADA"); *see* Id. at 3:2-4 (stating that evidence regarding "any other family Member's

9  loss of familial relationship" may be relevant "to proving Plaintiff's ADA claim"); and Id. at

10  3:13-17 (stating that "evidence regarding alleged slurs based on Moore's transgender status"

11  "may apply and inform the jury as to whether officers failed to provide a reasonable

12  accommodation and/or misperceived the effects of Ms. Moore's schizophrenia."). Plaintiff's

13  effort to identify what reasonable accommodation officers allegedly failed to provide appears to

14  be a moving target, designed to confuse the jury and introduce irrelevant evidence into the case.

15  The specific reasonable accommodation that Plaintiff claims were not given should be defined

16  before trial.

**ISSUES FOR TRIAL**

17

18      **I.    Issues That Have Already Been Determined**

19          The Court granted summary judgment in favor of defendants on plaintiff's unlawful

20  detention/arrest claim, stating "the officers had probable cause to take Moore into protective

21  custody and that, in any event, qualified immunity applies." ECF # 71 (Order at 6:18-21). The

22  Court further held that it "need not decide whether the officers had any other basis for probable

23  cause" given the officers had probable cause under Welfare & Inst. Code § 5150. Id. at 6, f.n. 6.

24          The Court held that "officers may use 'physical coercion' when taking someone into

25  custody," especially "when a person resists arrest," citing *Graham v. Connor*, 490 U.S. 386, 397

26  (1989). The Court further held, "the officers had little choice but to restrain her once the struggle

27  started." ECF # 71 (Order at 6). The Court found the "force used" was "reasonable based on

28  what the officers could know at the time." Id. 9:7-9.

1      The Court granted summary judgment in defendants' favor on plaintiff's "right to

2  familial relationship" claim under the 14th Amendment and state law wrongful death claim.

3      The Court dismissed plaintiff's claim against the City under *Monell v. Dept. of Social*

4  *Service*, 436 U.S. 658 (1987). As a result, there is no basis to allow evidence of any alleged

5  deficiency in the City's training or supervision.

6      Plaintiff voluntarily withdrew his gender discrimination claim in his opposition to

7  defendants' motion for summary judgment, admitting he had no evidence to support his claim.

8  ECF #62 at p. 1, f.n.1 ("none of the Officers admitted to making this slur; so Plaintiff withdraws

9  this claim.").

10      **II.**    **Plaintiff's Remaining Claim for Disability Discrimination Under the ADA**

11      Under Title II of the ADA, "no qualified individual with a disability shall, by reason of

12  such disability, be excluded from participation in or be denied the benefits of the services,

13  programs, or activities of a public entity, or be subjected to discrimination by any such entity."

14  42 U.S.C. 12132. Plaintiff has the burden of proving that Moore (1) had a disability and (2) was

15  a qualified individual under the statute's criteria. *Sheehan v. City and County of San Francisco*,

16  743 F.3d 1211, 1232 (9th Cir. 2014) (reversed on other grounds by *City and County of San*

17  *Franciso v. Sheehan*, 135 S. Ct. 1765, 1774 (2015); *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d

18  1056, 1060 (9th Cir. 2007); *Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). If plaintiff

19  meets his burden of satisfying both of these elements, plaintiff must show Moore was denied the

20  services of a public entity because of her disability. Id. Plaintiff can show Moore was denied

21  police services because of her disability if he can prove (1) Officer Brown wrongly arrested

22  Moore because she mistook the effects of her disability for a crime, or (2) failed to reasonably

23  accommodate her disability while taking her into protective custody, causing her excessive

24  injury or indignity in the process. *Sheehan*, 743 F.3d at 1232.

25      **A.  Moore is not a qualified individual under the statute's criteria**

26      Whether an individual is "qualified" depends on whether she meets the "essential

27  eligibility requirements for the receipt of services . . . provided by the public entity." 42 U.S.C. §

28  12131(2). The ADA does not "prohibit discrimination against an individual based on that

1    individual's current illegal use of drugs." 28 C.F.R. 35.131(a)(1). Additionally, the ADA does

2    not "require a public entity to permit an individual to . . . benefit from the services . . . of that

3    public entity when that individual poses a direct threat to the health or safety of others." 28

4    C.F.R. 35.139.

5        **1.   Moore is not qualified under the ADA because she was illegally using**

6        **drugs**

7        At the time of the call for service, Moore's roommate, John Hayes, reported that Moore

8    was on a drug binge. She had been "doing drugs all day" and had kicked him out of the

9    apartment they shared because he refused to buy her more drugs. Officer Brown believed that

10   Moore displayed signs of being under the influence of illegal drugs, stating, "It was my

11   impression that [s]he was – [s]he had something on board in terms of illegal substance."

12   Moore's "constant switching, in terms of his demeanor" gave Officer Brown the impression that

13   Moore was under the influence of illegal drugs. Brown Depo. 102:23-103:12.

14       The Alameda County Coroner's autopsy confirmed that Moore was using

15   methamphetamine as the toxicology report showed she had a toxic level of "meth" in her system

16   at the time of her death. To the extent that Officer Brown was required to make decisions

17   regarding how to respond to Moore based on her being under the influence of illegal drugs,

18   Moore was not a qualified individual under the ADA.

19       **2.   Moore is not qualified under the ADA because she presented a threat to**

20       **the health or safety of the officers and others**

21       To invoke the protections of the ADA, an individual cannot pose a significant risk to the

22   safety of others. *School Bd. of Nassau County v. Arline*, 480 U.S. 273, 287 f.n. 16 (1987). This

23   principle was incorporated into the ADA in the Attorney General's ADA Title II regulations,

24   which state, "[a] public entity may impose legitimate safety requirements necessary for the safe

25   operation of its services, programs, or activities." 28 C.F.R. § 35.130(h). Title II "does not

26   require a public entity to permit an individual to . . . benefit from the services . . . of that public

27   entity when that individual poses a direct threat to the health or safety of others." 28 C.F.R.

28   35.139(a). A "direct threat" means "a significant risk to the health or safety of others that cannot

1   be eliminated by a modification of policies, practices, or procedures, or by the provision of

2   auxiliary aids or services as provided in § 35.139." 28 C.F.R. § 35.104. "Department of Justice

3   regulations interpreting Title II should be given controlling weight unless they are 'arbitrary,

4   capricious, or manifestly contrary to the statute." *McGary v. City of Portland*, 386 F.3d 1259,

5   1269 n. 6 (9th Cir. 2004) (quoting *Chevron U.S.A. Inc. v. Natural Resources Def. Council, Inc.*,

6   467 U.S. 837, 844 (1984)).

7          A public entity must make "an individualized assessment, based on reasonable

8   judgment" whether a significant risk exists, relying on "the best available objective evidence, to

9   ascertain: the nature, duration, and severity of the risk; the probability that the potential injury

10  will actually occur, and whether reasonable modifications of policies, practices, or procedures . .

11  . will mitigate the risk." 28 C.F.R. § 35.139(b). Whether a significant risk exists "must be

12  determined from the standpoint of the person who refuses the treatment or accommodation."

13  *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998).  Whether a judgment is reasonable must be based

14  on "objective evidence" available to the decision maker, and not on things not known to the

15  decision maker.  Id. "[I]n the case of a person with mental illness there must be objective

16  evidence from the person's behavior that the person has a recent history of committing overt acts

17  or making threats which caused harm or which directly threatened harm." H.R. Rep. No. 485

18  (III), 101st Cong., 2d Sess. 45-46 91990). The Attorney General's guidance for law enforcement

19  states that, "[p]olice officers may, of course, respond appropriately to real threats to health or

20  safety, even if an individual's actions are a result of her or his disability."  U.S. Dept. of Justice,

21  Commonly Asked Questions about the Americans with Disabilities Act and Law Enforcement

22  (Rev. April 4, 2006).

23          When an employee of a public entity must make an on-the-spot judgment about safety,

24  additional discretion is allowed. *Lockett v. Catalina Channel Express, Inc.,* 496 F.3d 1061, 1065

25  (9th Cir. 2007). Deference is given to the safety judgments made by officers in "situations in

26  which a reasonable officer would fear for his safety and for the safety of those he is charged to

27  protect." *Seremeth v. Bd. of County Comms. Frederick County*, 673 F.3d 333, 340 (4th Cir.

28  2012); *Bircoll v. Miami –Dade County*, 480 F.3d 1072, 1086 (11th Cir. 2007). A safety judgment

1  can still be reasonable even if there is some evidence indicating the risk was less than

2  significant. *Theriault v. Flynn*, 162 F.3d 46, 50 (1ˢᵗ Cir. 1998).

3         In this case, the issue is whether Officer Brown made a reasonable judgment, based on

4  the objective, available information, that Moore posed a safety risk to the officers and potentially

5  to others. Given that Brown had information that (1) Moore had been agitated and aggressive

6  prior to the call, and  kicked Hayes out of their apartment at midnight because he would not buy

7  her more drugs, (2) that Hayes feared for his safety, (3) that Moore was violent on occasion, (4)

8  that Moore had been doing drugs "all day" (5) that Moore had access to knives and had been

9  known to use them, and (6) that Moore's demeanor appeared to be switching constantly as an

10  apparent result of her drug intoxication, it was reasonable for Officer Brown to determine that

11  officers needed to act promptly to secure the scene by placing Moore in handcuffs.  The

12  reasonableness of Officer Brown's judgment was buttressed by the fact the officers were

13  interacting with Moore on the fifth-floor, open-air landing of multi-unit apartment building, and,

14  at 350 pounds, Moore was a very large person. None of these basis for Officer Brown's decision

15  are stereotypes or generalizations about Moore's disability.  Given the circumstances, Officer

16  Brown made the reasonable judgment that Moore posed a significant safety risk at the same time

17  that she determined Moore to be suffering from psychiatric issues.

18         **B. The "Accommodations" Proposed by Plaintiff are Not Reasonable Under**

19              **the Circumstances**

20         Under the ADA, a public entity is required to make "reasonable modifications" in

21  policies, practices, or procedures" when necessary to avoid discrimination on the basis of

22  disability, unless the public entity can demonstrate that making the modifications would

23  fundamentally alter the nature of the services. *Sheehan v. City & County of San Francisco*, 743

24  F.3d 1211, 1231 (9ᵗʰ Cir. 2014) (citing 28 C.F.R. section 35.130(b)(7)).  The "plaintiff bears the

25  initial burden of producing evidence of the existence of a reasonable accommodation." *Id.* at

26  1233.

27         "[E]xigent circumstances inform the reasonableness analysis under the ADA." *Id.* at

28  1232; see also *Seremeth*, 673 F.3d at 337 (leaving a deaf man handcuffed for 30-45 minutes such

1    that he could not effectively communicate with deputies did not violate the ADA because of "the

2    exigent circumstances involved in a suspected domestic violence situation). In *Sheehan*, the

3    Ninth Circuit agreed with the Eleventh Circuit that the "exigent circumstances presented by

4    criminal activity and the already onerous tasks of police on the scene go [ ] to the reasonableness

5    of the requested ADA modification." *Id.* at 1232, discussing *Bircoll v. Miami Dade County*, 480

6    F.3d 1072, 1085 (11th Cir. 2007).  The *Sheehan* Court also agreed with the Fourth Circuit's

7    holding in *Waller ex rel. Estate of Hunt v. City of Danville*, 556 F.3d 171, 175 (2009) that

8    "exigency is one circumstance that bears materially on the inquiry into reasonableness under the

9    ADA." *Id*. The Sheehan court agreed with the holding in *Waller* that, "just as the constraints of

10   time figure in what is required of police under the Fourth Amendment, they bear on what is

11   reasonable under the ADA." *Id.* (quoting *Waller,* 556 F.3d at 175).

12        In his portions of the parties' Joint Proposed Pretrial Order, plaintiff asserts Officer

13   Brown should have made one or both of the following two accommodations so that Moore could

14   have been taken into protective custody without suffering "greater injury or indignity in that

15   process than other arrestees." *Id.* at 1232. First, Officer Brown should not have lied to Moore, or

16   threatened Moore with arrest under an outstanding arrest warrant. Second, Officer Brown should

17   have spent more than the 20 to 25 minutes she spent with Moore and tried to "sort facts," and/or

18   "contact family members."

19        Plaintiff's proposed accommodations are not "reasonable" for the following reasons. As

20   to the first proposed accommodation, plaintiff cannot establish that Officer Brown "lied" to

21   Moore or "threatened" Moore with arrest. Rather, Officer Brown calmly spoke with Moore for

22   20 minutes. Once she decided Moore needed to be detained for a psychiatric evaluation, Officer

23   Brown reasonably believed, based on her experience, that Moore would be more likely to go

24   with her to "clear up" a warrant, than to agree to a 72-hour psychiatric hold, because Officer

25   Brown knew that Moore had been 5150'd many times in the past. Additionally, Officer Brown's

26   belief that the warrant was for Moore was correct. Although she had no intention of arresting her

27   on the warrant that night, Officer Brown was following departmental policies that provide for

28   criminal matters to be deferred until after a subject who has been taken into protective custody

1  under Section 5150 receives treatment at a psychiatric hospital. Officer Brown knew she would

2  have time to confirm that the warrant was still active at a later time.

3        Likewise, plaintiff's second proposed accommodation is not reasonable (or logical)

4  because Officer Brown had already spent more than 20 minutes trying to "sort facts" with

5  Moore, but it was not possible because Moore was off-track, paranoid, delusional, agitated, and

6  high on methamphetamine. The officers' interactions with Moore took place on a 5th floor open

7  air landing with only a railing to protect them from falling. The officers were required to make

8  on-the-spot decisions about how to manage the call safely, and needed to take basic safety

9  precautions to protect themselves and others from possible injury or harm. Thus, exigencies of

10  the circumstances made prolonging the encounter unreasonable. Additionally, officers had no

11  way of knowing whether contacting family members would exascerbate Moore's agitation, or

12  help her, nor would they have known which family members to call, or how to reach them.  See

13  *Waller*, 556 F.3d at 175.

14        Therefore, Officer Brown did not act unreasonably by not utilizing the plaintiff's above

15  two accommodations under the actual circumstances of the call for service.

16        **C.  Plaintiff Has Not Identified the "Crime" Officers Confused with Moore's**

17              **Mental Illness**

18        In plaintiff's Second Amended Complaint, he alleges in support of his ADA claim that

19  "Defendant Officers decided to unlawfully arrest Decedent MOORE on an outstanding warrant

20  that he was not the subject of, further exacerbating his mental health crisis."  SAC, Doc. # 31 at

21  ¶ 78. While at the pleading stage, plaintiff appeared to allege that officers "falsely arrested"

22  Moore based on misperceiving his disability (mental illness) for a warrant, it has become

23  exceedingly obvious that this scenario is neither logical nor supported by evidence. Plaintiff's

24  allegations are not like the classic situations in "mistaken decision to arrest" cases where, e.g.,

25  officers mistake a deaf individual's inability to follow their directions for deliberate resistance,

26  *Lewis v. Truitt*, 960 F. Supp. 175 (S.D. Ind. 1997), or mistake the effects of a stroke for public

27  intoxication. *Jackson v. Town of Sanford*, 1994 WL 589617 (D. Maine).

28

1    Although plaintiff continues to press his claim that officers mistakenly decided to arrest

2    Moore based on misperceiving her disability as a crime, he has not stated *what crime* she was

3    allegedly falsely arrested for, other than the warrant.  This makes no sense because Officer

4    Brown did not and could not mistake Moore's mental illness for a paper warrant, and plaintiff

5    has no basis for continuing to assert that she did. Plaintiff also cannot argue that Officer Brown

6    mistook Moore's mental illness for resisting arrest, as Officer Brown made the decision to take

7    Moore into protective custody *prior* to Moore's physical resistance, not after. Plaintiff has no

8    evidentiary basis for asserting that Officer Brown made the decision to handcuff Moore for the

9    crime of resisting or obstructing a peace officer (Penal Code § 148) because again, the resistance

10   came after the decision to 5150.

11          **III.     Plaintiff's Damages Claim Under the ADA**

12          Injunctive relief is the traditional remedy available in a lawsuit under Title II and Section

13   504.  *Barnes v. Gorman,* 536 U.S. 181, 187 (2002). Plaintiff's Second Amended Complaint does

14   not pray for injunctive relief.  See Doc. # 31. In *Sheehan*, the Supreme Court stated that it had

15   not decided and, for lack of briefing, declined to decide, whether a public entity can be held

16   liable for damages under Title II for an arrest made by its police officers.  *City & Cty. of San*

17   *Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1773-74 (2015).

18          Until such time as the Supreme Court decides whether monetary damages are appropriate

19   in a Title II ADA case, monetary remedies are limited to compensatory damages, and they are

20   available only if a plaintiff can prove that the discrimination by the public entity was intentional.

21   *Duvall v. County of Kitsap*, 260 F.3d 1124, 1138-40 (9th Cir. 2001); *Lovell v. Chandler*, 303

22   F.3d 1039, 1056 (9th Cir. 2002) ("compensatory damages are not available under Title II . . .

23   absent a showing of discriminatory intent").

24          Intentional discrimination means conduct that results from actual malice or deliberate

25   indifference to the rights of the individual. *Duvall*, 260 F.3d at 1138. To show such intentional

26   discrimination, plaintiff will have to prove that Officer Brown knew of a reasonable

27   accommodation that would allow Moore to be taken into protective custody without harm, but

28   made a considered and deliberate decision not to make that accommodation.  *Id.* at 1138-40.

1    Plaintiff brings the ADA claim as a "survivor action" pursuant to California Code of

2    Civil Procedure (CCP) section 377.30. Damages for a survival action under CCP § 377.30 are

3    limited to special damages such as lost wages and medical expenses (which plaintiff concedes

4    are nonexistent in this case) and general damages for "pain and suffering." [3] Thus, if plaintiff is

5    able to prove that officers violated Moore's rights under the ADA, and prove that officers

6    intentionally discriminated against Moore on the basis of her disability, her damages are limited

7    to what compensation for the pain and suffering she experienced prior to her death due to their

8    alleged failure to accommodate her. *Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105 (9th

9    Cir. 2014); *Pease v. Beech Aircraft Corp.*, 38 Cal. App. 3d 450, 460 (1974).

10

11    Dated:  October 11, 2017              Respectfully submitted:

12                                         LYNNE S. BOURGAULT, Deputy City Attorney

13                                         By:  _____/s/_____

14                                              LYNNE S. BOURGAULT
                                                Attorney for Defendant

15

16

17

18

19

20

21

22

23

24

25

26

27    _____
          [3] Plaintiff concedes that punitive damages are not available in a Title II ADA claim.

28    *Barnes v. Gorman,* 536 U.S. 181, 189 (2002).