1  JOHN L. BURRIS, ESQ. SBN 69888
   ADANTE D. POINTER, ESQ., SBN 236229
2  LATEEF H. GRAY, ESQ., SBN 250055
   MELISSA C. NOLD, ESQ., SBN 301378
3  LAW OFFICES OF JOHN L. BURRIS
   Airport Corporate Centre
4  7677 Oakport Street, Suite 1120
   Telephone:     (510) 839-5200
5  Facsimile:      (510) 839-3882

6  Attorneys for Plaintiff
   ARTHUR MOORE

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARTHUR MOORE, individually and as Successor-In-Interest to Decedent XAVIER "KAYLA" MOORE, | Case No. 3:14-cv-00669-CRB |
| | **PLAINTIFF'S TRIAL BRIEF** |
| Plaintiff, | Pretrial Conf. Date:  October 18, 2017 |
| vs. | Time:  10:00 AM |
| | Judge:  Hon. Charles R. Breyer |
| CITY OF BERKELEY, *et al*, | Place:  Courtroom 6, 17th Floor, 450 Golden Gate, San Francisco |
| Defendants. | Trial Date:  November 6, 2017 |

TRIAL BRIEF                                                                                                                          i
CASE NO: 3:14-cv-00669-CRB

# MEMORANDUM OF POINTS AND AUTHORITIES
## I.  RELEVANT FACTUAL BACKGROUND AND SHORT INTRODUCTION

This case arises from the death of "Kayla" Xavier Moore (hereafter, "Kayla Moore"). Kayla Moore was an obese, transgender African-American woman that suffered from a well recorded case of schizophrenia. Plaintiff, Arthur Moore, brings suits on behalf of Decedent Kayla Moore as her successor-in-interest.

Berkeley Officers Gwendolyn Brown, Kenneth Tu and Brandon Smith were to called to Kayla Moore's apartment to investigate a roommate disturbance. Officers were aware from both dispatch and the reporting party, John Hayes, that Kayla Moore was schizophrenic, off her medications, had used drugs and/or drank earlier in the day and possibly needed to be brought into protective custody under 5150 for mental health services. The reporting party John Hayes met the three officers outside the apartment building and led them to Kayla Moore's apartment. Officer Brandon Smith informed Officer Brown of two potential warrants for John Hayes and Kayla Moore.

Officer Brown directed Officer Smith to take Mr. Hayes into custody for an outstanding warrant that Officer Smith confirmed. Officer Smith arrested Mr. Hayes and led him out of the building to the car, while Officer Brown and Officer Tu remained with Kayla Moore. Kayla Moore peacefully talked with Officer Brown at the door of her apartment. Officer Brown noted that Kayla Moore was not armed, was not threatening or violent, observed no evidence of drugs or paraphernalia, was cooperative.

However, Kayla Moore appeared to be suffering a schizophrenic episode because Kayla Moore insisted the officers were not real, talked about dinosaurs, talked to people that did not exist, and claimed the FBI was following her. Officer Brown decided to take Kayla Moore into protective custody because she was gravely disabled as a result of a mental health disorder. However, Officer Brown told Kayla Moore that she was being brought into custody for an outstanding warrant despite the fact she was bringing her into custody under a 5150.

Officer Brown did not tell her partner Officer Tu about her secret intentions. Officer Tu was left to believe that he was conducting a warrant arrest. Officer Brown signaled for Officer Tu to go hands on with Kayla Moore. Officers grabbed for Kayla Moore, who became frightened and fled into her apartment where officers Tu and Brown jumped on top of her. Officer Brown called for help over the radio. Four more officers arrived and jumped onto Kayla Moore. At some point in the struggle,

TRIAL BRIEF                                                                                                                                               1
CASE NO: 3:14-cv-00669-CRB

while Kayla Moore was handcuffed lying on the ground with officers pinning her down, she stopped breathing.

Plaintiff contends that the only issue to be decided is whether officers violated Title II of the American Disabilities Act either by failing to provide a reasonable accommodation to Decedent Kayla Moore and/or by mistaking the effects of Kayla Moore's disability of schizophrenia for criminal resistance of a warrant arrest.

Defendants hope to insert multiple elements causing a series of mini trials in order to erroneous disqualify Kayla Moore from the protections provided for under the ADA.

## II.   DISCUSSION

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In order to prevail on the ADA claim, Plaintiff must show Decedent (1) is an individual with a disability; (2) is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [her] disability. *O'Guinn v. Lovelock Corr. Ctr.*, 502 F.3d 1056, 1060 (9th Cir.2007).

### A.   DECEDENT KAYLA MOORE IS AN INDIVIDUAL WITH A DISABILITY PROTECTED UNDER THE ADA

#### 1. *Decedent Kayla Moore Is an Individual with a Disability Because Kayla Moore Was Schizophrenia, Has a Record of Schizophrenia, And/Or Was Regarded As Suffering From Schizophrenia*

The American with Disabilities Act was passed and codified into law in 1990 in order to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities. 42 U.S.C. § 12201. After a number of Supreme Court cases that "narrowed the broad scope of protection intended to be afforded by the ADA, thus eliminating protection for many individuals whom Congress intended to protect," Congress passed the ADA Amendments Act in 2008 in order to broaden the coverage and reverse the limitations of the Supreme Court cases that were stripping individuals from ADA protections. *ADA Amendments Act*, Section 2 (a-b), PL 110–325, September 25, 2008, 122 Stat 3553.

The definition of a disability is an individual who meets one of the three criteria: (a) physical or mental impairment that substantially limits one or more major life activities of such individual; (b) or a record of such an impairment; (c) or being regarded as having such an impairment. § 12102 (1)(A-C). Major life activities include, but are not limited to interacting with others, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. § 12102 (2)(A); *Weaving v. City of Hillsboro*, 763 F.3d 1106, 1112 (9th Cir. 2014). Here Kayla Moore meets all three of these criteria.

### a. Kayla Moore Suffers from Schizophrenia

Kayla Moore's schizophrenia caused her to have delusions, hallucinations, paranoia. Kayla Moore's schizophrenia substantially limited her major life activities because her disability substantially limited her being able to interact with others, communicate, think, concentrate, and work. Many of these limitations were exhibited in this very incident with officers. Furthermore "schizophrenia" is a listed mental impairment that qualifies as a disability under the ADA. CFR 35.108(d)(2)(iii)(K).

### b. Kayla Moore Has a Record of Schizophrenia

Both Plaintiff and Defendant are in possession of extensive medical records that detail Kayla Moore's long standing battle with her schizophrenia. Furthermore, Dr. Bonnes, the doctor that declared Kayla Moore dead at the hospital the night of the incident noted a history of schizophrenia. (See attached Exhibit D).

### c. Kayla Moore Was Regarded as Schizophrenic

It is undisputed that the first responding officers Gwendolyn Brown, Kenneth Tu and Brandon Smith received information from dispatch and at the scene from the reporting party, John Hayes, that Kayla Moore was schizophrenic, off medications and possibly needed a 5150.

Kayla Moore needs only to have met one of the three criteria to fall under the category of an individual with a disability and she meets all three. Therefore, this should not be an issue up for litigation at trial.

### 2. *Decedent Kayla Moore Is an "Individual with a Disability" Protected Under the ADA Because Kayla Moore Was Otherwise Entitled to Mental Health Services*

Defendants argue that Decedent Kayla Moore is not "an individual with a disability" under Title II of ADA because the officers believed that Decedent appeared to be high on drugs and cited to 42 U.S.C. § 12210 (a) and 28 C.F.R. § 35.131(a) (1) for support. (See Defendants' Motion for

TRIAL BRIEF
CASE NO: 3:14-cv-00669-CRB

3

Summary Judgment, Document 56, page 32; Defendants' Reply to Plaintiff's Opposition, Document 66, page 19). Under 42 U.S.C. § 12210 (a), an individual is not considered an "individual with a disability" if the individual is "currently engaging in the illegal use of drugs" and the "covered entity acts on the basis of such use." 42 U.S.C. § 12210 (a).

However, § 12210 subsection (c) and 28 C.F.R. § 35.131(b) (1) provide an exception: "an individual shall not be denied health services, or services provided in connection with drug rehabilitation, on the basis of the current illegal use of drugs *if the individual is otherwise entitled to such services*." § 12210 (c) [emphasis added]. Here, Decedent Kayla Moore was otherwise entitled to mental health services and accommodations from the officers under the procedures and policies of California Welfare and Institution Code 5150, Berkeley Police Department General Order T-19: Americans With Disability Act and General Order I-16: Mentally Disordered Person[1]. See attached Exhibits A-C.

This comports with the conclusions in *RHJ Medical Center v. City of Dubois* where a Plaintiff sued the City of Dubois for violation under Title II of the ADA for banning methadone clinics in a zoning ordinance. *RHJ Medical Center v. City of Dubois* (W.D. Pennsylvania 2010) 754 F.Supp.2d 723 (overturned on other grounds). In *RHJ Medical Center* the defendant City objected that since no patients were included in the lawsuit, the defendant City could not determine whether the "carve out" section for individuals currently engaging in the use of illegal drugs would apply under § 12210 (a). *Id.* at 748.

The court declined to apply this § 12210 (a) "carve out" section unilaterally because "even assuming that RHJ's prospective patients were currently engaging in the illegal use of drugs, if they would be otherwise entitled to such drug counseling services, they would still be eligible for protection under the ADA or RA. It would seem that this provision was drafted specifically to remedy situations wherein individuals who currently engage in drug use seek the services of a methadone clinic." *Id.* at 750.

---

[1] Defendant City of Berkeley never disclosed Berkeley Police Department General Order T-19: Americans with Disabilities Act, although the documents were in their possession and custody and the documents fell within Plaintiff's Requests for Production of Documents No. 12-13, Set One. Plaintiff only recently as a few days ago discovered the documents through independent online research in preparation for trial. Plaintiff has attached a copy of Plaintiff's Request for Production of Documents, Set One and Defendants' Response (See attached Exhibits B-C), which clearly would have covered this General Order since it asks for Berkeley Police Department policies in regards to the detention of persons with a suspected and/or known mental illness. Plaintiff has been prejudiced by Defendants' failure to make this disclosure (and Defendants are in violation of FRCP 36 under FRCP 37) since Plaintiff was never able to use the Berkeley Police's General Order on the ADA in the discovery process, especially in Plaintiff's depositions of the responding officers.

Here, even assuming *in arguendo* that Kayla Moore was high on drugs, if Kayla Moore was still entitled to the mental health services, reasonable accommodations, police procedures, and policies provided under Welfare & Institutions Code § 5150, Berkeley Police Department General Order T-19: Americans With Disability Act and General Order I-16: Mentally Disorder Persons, then Kayla Moore is still entitled to protection under the ADA and/or Rehabilitation Act.

California Welfare and Institution Code 5150 provides that a peace officer and/or mental health professionals may take a person into custody that are gravely disabled *as a result of a mental health disorder*. California Welfare & Institutions Code § 5150 (a); (g)(1) (emphasis added). Here, Officer Brown determined that as result of a mental health disorder that Decedent Kayla Moore was gravely disabled and needed to be brought into custody for mental health services. In other words, even assuming *in arguendo* that Kayla Moore was high on drugs, Kayla Moore was otherwise entitled to the mental health services, reasonable accommodations, police procedures, and policies in connection with Welfare & Institutions Code § 5150 including not threatening her with arrest. Furthermore, Officer Brown admitted in her declaration to the court that she was not taking Kayla Moore into custody for a criminal basis (arrest warrant and/or disturbing the peace), but in order to provide Kayla Moore with mental health services.

Berkley Police Department General Order T-19: Americans With Disability Act requires that when Berkeley officers know that a person taken into custody has a mental, emotional, or psychological disability, them the officer must make reasonable efforts: (1) to use least restraint necessary; (2) extend the time on the call in order to reassure the individual, sort facts, interact with family members and others; (3) must remain familiar with appropriate emergency commitment/detention procedures including those found under California Welfare and Institution Code 5150. Again, even assuming *in arguendo* that Kayla Moore was high on drugs, Kayla Moore was otherwise entitled to the mental health services, reasonable accommodations, police procedures, and policies the Berkeley Police Department requires from their employees including those under Berkley Police Department General Order T-19: Americans With Disability Act and under Welfare & Institutions Code § 5150.

Here, Plaintiff alleges that the officers violated precisely the aforementioned mental health services and/or reasonable accommodations required both by California law and the Berkeley Police Department General Order T-19: Americans With Disability Act. Therefore, under 42 U.S.C § 12210 (c) Decedent Kayla Moore was protected by the ADA and/or RA.

### 3. Kayla Moore Is Entitled to Protections under Title II of the American Disabilities Act because 42 U.S.C § 12210 (a)'s "Carve Out" Section Is Not Intended to Apply to Police And Would Result in Brutal Injustice

Furthermore, the 42 U.S.C § 12210 (a) carve-out section was never intended and does not function within police-citizen interactions. Rather, 42 U.S.C § 12210 (a) "was intended to ensure that employers could discharge employees who were actually under the influence while at work and that employers could not discharge employees who were recovering addicts but were, at the time of any personnel action, drug free." See *New Directions Treatment Services v. City of Reading*, 490 F.3d 293, 309 (3rd Cir. 2007) (quoting H.R. Rep. No. 101–596, at 62 (1990), U.S. Code Cong. & Admin. News 1990, pp. 565, 570–571 (Conf. Rep.)); *see also RHJ Medical Center v. City of Dubois* (W.D. Pennsylvania 2010) 754 F.Supp.2d 723, 749. Although this section fits neatly within the employment scope, it has proven to fit poorly outside the employment context. *Supra, New Directions* at 309; *supra, RHJ* at 749.

The carve out section has never been applied to police cases before and was not intended to provide immunity to police officers from the American Disabilities Act when they fail to provide reasonable accommodations and/or misperceive the effects of a person's disability simply because they are engaging in the use of drugs. This is a common sense conclusion because otherwise allowing this sort of immunity would lead to ghastly unjust situations. For example, this would prevent a person in a wheelchair from receiving ADA protection if police officers decided to take him/her into custody for being in possession of a narcotic and put him/her into the back of a truck without making a reasonable accommodation of securing his wheelchair and injured the person winds up injured as a result. This would also prevent a person who was blind that the police took into custody for possession of narcotics from seeking ADA protection when officers, knowing he was blind, refused to give any verbal commands and gave only visual commands, and then arrested him/her for resisting arrest and/or obstruction of a peace officer in the course of their duties.

Similarly here, police officers should not be provided immunity in cases where a person suffering from a schizophrenic episode is being detained, and officers fail to follow simple 5150 procedures and department policies. The unfortunate fact is that the very same population that suffers from mental illnesses also are more vulnerable to, and have exceedingly higher rates of, drug addiction

and abuse.[2] Applying this "carve out" section would result in the brutal injustice of rewarding bad cops when they discriminate and kill the most vulnerable people in our society.

### B. THE COURT SHOULD NOT APPLY THE "DIRECT THREAT" EXCEPTION BECAUSE IT DOES NOT APPLY TO OFFICER ARRESTS AND KAYLA MOORE WAS NOT A THREAT TO OFFICERS

The Ninth Circuit maintains that Title II of the ADA applies to arrests and even more "broadly to police 'services, programs, or activities.'" Sheehan, 743 F.3d at 1232. Of note, the Ninth Circuit also holds "that exigent circumstances inform the reasonableness analysis under the ADA, just as they inform the distinct reasonableness analysis under the Fourth Amendment." Id. (citing Waller ex. Rel. Estate of Hunt v. City of Danville, 556 F.3d 171, 175 (4th Cir. 2009)). Here, Kayla Moore had not threatened anyone including officers with any violence, had not committed any crime, was unarmed, inside her apartment and officers were able to conduct a peaceful twenty minute conversation with her without any aggression from her at all. There are absolutely no exigent circumstances in this case that would preclude officers from providing her each and every accommodation in their training for a mentally ill person under the ADA. Officers could have asked if Kayla Moore had taken her medications, if she had friends and/or family nearby that could take her to the hospital, reassured her that she was not under arrest or had committed any crime. In fact, all of these accommodations are in the officers' training to prevent a mentally ill person from becoming agitated precisely in the way that it caused Kayla Moore to become agitated when Officer Brown lied to her about being under an arrest for a warrant .Officers cannot be permitted to violate their ADA training and policy, cause a mentally ill person to become agitated, attack her, escalate the situation then enjoy immunity for a threat they create in violation of their training. Had officers simply followed their training in regards to 5150 protocol and told Ms. Moore that she was not under arrest but needed to go to the hospital, then as the many other times she was taken for a 5150, Ms. Moore would be alive today.

Although Congress did not expressly incorporate this principle into Title II of the ADA, but the Justice Department's implementing regulations provide that Title II "does not require a public entity to permit an individual to participate in or benefit from the services, programs, or activities of that public entity when that individual poses a direct threat to the health or safety of others." 28 C.F.R. § 35.139(a). Title II is distinct from Title I and Title III, because Congress did not include a public safety exception in Title II of the ADA. The regulations do that. And because Title II unambiguously covers

---

[2] "Comorbidity: Addiction and Other Mental Illnesses" https://www.drugabuse.gov/publications/research-reports/comorbidity-addiction-other-mental-illnesses/why-do-drug-use-disorders-often-co-occur-other-men

TRIAL BRIEF                                                                                                                                                                7
CASE NO: 3:14-cv-00669-CRB

all instrumentalities of state or local government without any exception that could cast the coverage of arrests into doubt.

Moreover, the statute's legislative history shows that Congress expressly intended to make unlawful the discriminatory treatment of persons with disabilities by law enforcement officials. During legislative debate, Congressman Mel Levine stated: "Regretfully, it is not rare for persons with disabilities to be mistreated by police." 136 Cong. Rec. H2599, H2633 (May 22, 1990). He then cited examples of mistreatment of persons with cerebral palsy, epilepsy, and hearing loss by law enforcement officials and concluded that, even when conducted in good faith, "[t]hey constitute discrimination, as surely as forbidding entrance to a store or restaurant is discrimination." Id. For all these reasons, this Court should hold that the direct threat exception to the reasonable accommodation requirement does not apply where, as here, the very reason for a police officer's interaction with a mentally ill or emotionally disturbed individual relates specifically to the individual's disability.

### C. OFFICERS ADA VIOLATIONS CAUSED THE SUFFERING AND DEATH OF KAYLA MOOORE

Defendants contend that Kayla Moore's cause of death was a cardiac arrest as a result of her agitation, drug use and enlarged heart. Plaintiff contends that the officers asphyxiated Kayla Moore when they pinned her down. However, damages are available under both theories since this is a survival action under California Code of Civil Procedure §377.20. The damages flow from the moment the officer's either failed to provide a reasonable accommodation and/or misperceived Kayla Moore's resistance as criminal obstruction rather than the effects of her disability which ultimately caused Kayla Moore's agitation leading her death. Since damages are not only the pain and suffering for the officers' violation of the ADA but also for causing the Kayla Moore to suffer greater injury or indignity in that process than other arrestees, Plaintiff is entitled to the entirety of that suffering under either theory *See Sheehan v. CCSF,* 743 F. 3d 1211, 1232*. Waller,* 556 F.3d, 171 174*; Gohier, 186 F.3d* 1216, 1220–21.

### III.   CONCLUSION

For the reasons above, this Court should limit the trial to strictly to the issue of whether officers violated Title II of the ADA by either failing to provide a reasonable accommodation to Kayla Moore and/or mistaking the effects of her schizophrenia as criminal activity.

TRIAL BRIEF                                                                                                                                8
CASE NO: 3:14-cv-00669-CRB

| | | |
|---|---|---|
| 1 | Dated: October 11, 2017 | The Law Offices of John L. Burris |
| 2 | | _/s/Adante D. Pointer_ |
| 3 | | Adante D. Pointer<br>Attorney for Plaintiff |

TRIAL BRIEF
CASE NO: 3:14-cv-00669-CRB

9